UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

TEMPUR SEALY INTERNATIONAL, INC.,
TEMPUR-PEDIC INTERNATIONAL INC.,
TEMPUR-PEDIC MANAGEMENT, LLC.,
TEMPUR-PEDIC NORTH AMERICA, LLC,
and DAN-FOAM APS,

1000 Tempur Way
Lexington, Kentucky 40511

CIVIL ACTION NO. _____

Plaintiffs,

v.

WONDERGEL, LLC, and
EDIZONE, LLC dba PURPLE

123 East 200 North
Alpine, Utah 84004

Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

This action arises out false and misleading advertising and promotion engaged in by Defendants WonderGel, LLC and EdiZONE, LLC dba Purple (collectively "Purple") to increase sales of Purple's products at the expense of competing products manufactured and sold by Plaintiffs Tempur Sealy International, Inc., Tempur-Pedic International Inc., Tempur-Pedic Management, LLC, Tempur- Pedic North America, LLC, and Dan Foam ApS (collectively "Tempur Sealy").

1

Tempur Sealy is a leader in the bedding industry known for its research and development, manufacture, supply, and sale of premium mattresses, pillows, and other comfort products (hereinafter the "TEMPUR-PEDIC Products").

Tempur Sealy brings this lawsuit seeking damages for and an injunction to stop current and prevent future advertising claims by Purple about Tempur Sealy's TEMPUR-PEDIC Products that are false and misleading. This suit is brought under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Kentucky Unfair Trade Practices Act, KRS § 367.170, and state common law causes of action sounding in Unfair Competition and Unjust Enrichment.

The advertising of products in the bedding market has been and continues to be a critically important method of persuading consumers to select one brand over the other. Therefore, it is important that a company's advertising of its own products and advertising that includes products of competitors be truthful and non-misleading so that consumers may make decisions based on accurate information. Because Purple has violated this basic tenant of advertising law and has done so in a brazen and willful manner, Tempur Sealy is entitled to an award of damages, injunctive relief, treble damages, punitive damages, and attorneys' fees.

## JURISDICTION AND VENUE

1. This is an action for unfair competition and false advertising in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), unfair trade practices under K.R.S. § 367.170, Unfair Competition and Unjust Enrichment in violation of the common law of the Commonwealth of Kentucky.

2. This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338. This Court has jurisdiction over Tempur Sealy's related common law claims under 28 U.S.C. §§ 1338 and 1367.

3. This Court has personal jurisdiction over Purple in that Purple regularly does or solicits business or engages in an ongoing course of conduct in the Commonwealth of Kentucky, including through an interactive web site, and has engaged and is engaging in activities that are causing substantial injury to Tempur Sealy in this judicial district.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, as set forth more fully below, a substantial part of the events or omissions occurred in or a substantial part of the property is located in this judicial district and under 28 U.S.C. § 1391(c) because Defendants may be considered residents of this judicial district under the relevant long-arm statute.

## THE PARTIES

5. Plaintiff Tempur Sealy International is a Delaware corporation having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

6. Plaintiff Tempur-Pedic International Inc. is a Delaware corporation having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

7. Plaintiff Tempur-Pedic Management, LLC is a Delaware limited liability company having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511.

8. Plaintiff Tempur-Pedic North America, LLC is a Delaware limited liability company having its principal place of business at 1000 Tempur Way, Lexington, Kentucky 40511. Tempur-Pedic North America, LLC is a wholly owned subsidiary of Tempur-Pedic Sales, Inc.

9. Plaintiff Dan-Foam ApS is a Danish corporation having its principal place of business at Holmelund 43, Aarup DK-5560, Denmark.

10.     Defendant WonderGel LLC is a corporation organized under the laws of the State of Delaware with a principal place of business at 123 East 200, North Alpine, Utah  84004.

11.     Defendant EdiZONE, LLC is a corporation organized under the laws of the State of Delaware with a principal place of business at 123 East 200, North Alpine, Utah  84004.

12.     Upon information and belief, Purple is engaged in the business of selling mattresses throughout the United States, including in this jurisdiction, through am interactive commercial web site that permits consumers throughout the United States to purchase products through the URL: www.onpurple.com.

13.     Upon information and belief, Purple is engaged in advertising its products, including broadcasting the advertising at issue in this lawsuit, on its web site www.onpurple.com, on the web site www.YouTube.com at the following URL https://youtu.be/gN9ayoV1EXg, on the Sleep Sherpa web site at the following URL: http://www.sleepsherpa.com/mattresses/purple-mattress-review-purple-reign/ and across the Internet through banner and other digital "pop-up" advertising.

## FACTUAL ALLEGATIONS AS TO ALL COUNTS

### Plaintiff's Reputation Among Consumers in the Bedding Industry

14.     Tempur Sealy is a leader in the bedding industry and has established itself as an innovator in sleep material technologies designed to deliver comfort to consumers.

15.     Tempur Sealy promotes and sells its high-quality TEMPUR-PEDIC Products nationwide, including on television and on the Internet, under the TEMPUR-PEDIC, TEMPUR-PEDIC & Reclining Figure Design and TEMPUR word marks.

16.     Tempur Sealy also has designed and adopted and utilizes distinctive trade dress in connection with the TEMPUR-PEDIC Products, including recognizable design features of uniquely colored and specifically placed zipper band tracks, distinctive contoured patterns on its

4

mattress surfaces, and contrasting colored fabric on the lower one-third of its mattresses ("Tempur Sealy Trade Dress").

17. Tempur Sealy has spent millions of dollars promoting the Tempur Sealy Trade Dress, including the prominent display of its distinctive trade dress in connection with its TEMPUR-CONTOUR mattress, which incorporates a distinctive orange zipper track band, distinctively designed mattress surface cover, and contrasting fabric on the lower one-third of the product (TEMPUR-CONTOUR Trade Dress). Affidavit of Tiffane Thompson, Director of Marketing, Exhibit 1, Par. 4 ("Tempur Sealy Affidavit").

18. Since at least March 2014, Tempur Sealy has used the TEMPUR-CONTOUR Trade Dress as a commercial indicator to communicate to consumers who are shopping for mattresses that the product comes from Tempur Sealy. Tempur Sealy Affidavit, Exhibit 1, Par. 5.

19. Mattresses are difficult to mark with traditional word marks. As a result, consumers look to distinctive exterior product features for indications of source associated with a particular brand, including Tempur Sealy's TEMPUR-PEDIC brand. Tempur Sealy Affidavit, Exhibit 1, Par. 6.

20. Tempur Sealy designed the TEMPUR-CONTOUR Trade Dress to function as a commercial indicator and has undertaken extensive targeted advertising to secure the commercial significance of the trade dress in the minds of the relevant consumers as a source identifier. Tempur Sealy Affidavit, Exhibit 1, Par. 5.

21. As one example, Tempur Sealy's broadcast television advertisement titled "Tempur-Pedic Covers" is intended to and does in fact draw the attention of the relevant consumers directly to the commercially distinctive feature of the product, namely the TEMPUR-

5

CONTOUR Trade Dress. Tempur Sealy Affidavit, Exhibit 1, Pars. 9-10. Screen shots taken from the "Tempur-Pedic Covers" advertisement featuring the trade dress is attached hereto as Exhibit 2.

22. The "Tempur-Pedic Covers" advertisement is effective in emphasizing the TEMPUR-CONTOUR Trade Dress as applied to the product by featuring the trade dress prominently. Tempur Sealy Affidavit, Exhibit 1, Par. 9.

23. The "Tempur-Pedic Covers" advertisement aired on national broadcast television over 4000 times during 2014 alone. The "Tempur-Pedic Covers" television advertisement most recently aired during the highly ranked nationally broadcast television show NCIS. Tempur Sealy Affidavit, Exhibit 1, Par. 11.

24. Tempur Sealy tracks commercial impressions created through advertising. The "Tempur-Pedic Covers" television advertisement prominently featuring the TEMPUR-CONTOUR Trade Dress created 939,916,133 commercial impressions among consumers who have viewed the advertisement. Tempur Sealy Affidavit, Exhibit 1, Par. 12.

25. All advertising for Tempur Sealy's TEMPUR-CONTOUR product, including advertising on Tempur Sealy's commercial web site www.tempurpedic.com, features the TEMPUR-CONTOUR Trade Dress prominently. Tempur Sealy Affidavit, Exhibit 1, Par. 13. An example of Tempur Sealy's TEMPUR-CONTOUR Trade dress as featured on Tempur Sealy's web site appears below and is attached hereto as Exhibit 3:



26. Although Tempur Sealy could display its mattresses in advertisements with sheets, in a "made bed" fashion, it intentionally displays and emphasizes the TEMPUR-CONTOUR Trade Dress as a way for consumers to identify Tempur Sealy as the source of the TEMPUR-PEDIC Products. Tempur Sealy Affidavit, Exhibit 1, Par. 14.

27. Sales of products bearing the TEMPUR-CONTOUR Trade Dress were $135,998,639.00 in 2014 and exceeded $148,838,218.00 in 2015. Total sales of products bearing the TEMPUR-CONTOUR Trade Dress have exceeded $300,000,000.00. Tempur Sealy Affidavit, Exhibit 1, Par. 15.

28. Tempur Sealy has spent millions of dollars advertising its products bearing the TEMPUR-CONTOUR Trade Dress, and as a result its trade dress has become well-known among consumers as an indicator of a single commercial source and of a reputation for high quality. Tempur Sealy Affidavit, Exhibit 1, Par. 13.

### Defendants' Unlawful Advertising

29. Upon information and belief, Purple engaged in a crowd-funding campaign to raise capital to promote its business beginning in September 2015 using the Internet based crowd-funding web site www.Kickstarter.com. *See*

7

https://www.kickstarter.com/projects/227992716/purple-the-latest-technology-in-comfort-and-sleep/description.  Upon information and belief, the funding campaign ended on November 7, 2015.

30.     Upon information and belief, in or around December 2015, Purple hired a third-party well-known for "viral" Internet advertising to conduct a "talent search" for the purpose of creating an online advertisement with the hope that it would "go viral."  Purple and its production company used an interactive web site inviting applicants to submit an audition video for this purpose.  *See* http://www.backstage.com/casting/goldilocks-94777/goldilocks-352438/.

31.     A script for the advertisement was included on the web site used to solicit actors to submit an audition tape for the video advertisement.  The script for the advertisement includes a reference to use of the "Tempurpedic logo" in one frame of the video.  Exhibit 4.

32.     Upon information and belief, Purple purchased one or more of Tempur Sealy's TEMPUR-Contour mattresses for use in the creation of its advertising and did use Tempur Sealy's products in its advertising.

33.     Upon information and belief, in December 2015 and/or January 2016, Purple created what has become known as the "Goldilocks video" ("False Advertisement") in which it prominently featured the TEMPUR-CONTOUR mattress as shown in the screenshot shown below and attached hereto as Exhibit 5.



34. The False Advertisement features an actor/spokesperson identified by Purple as a "Goldilocks" who makes the following statements directed to the TEMPUR-Contour mattress:

*Looking for some shoulder pain? Try a hard mattress.*

*It may feel like a rock and put pressure on your hips,*

*But it's the perfect way to tell you partner, "Hey baby; Want some arthritis?"*

35. The False Advertisement includes the Goldilocks character falling back onto the TEMPUR-CONTOUR mattress in a manner and accompanied by sound effects that suggest that the mattress is extremely hard and painful for those who use it, as shown in the screenshot below and in the Exhibit 6 attached hereto.

9



36. The above statements and presentation of images in the advertising violate federal and state advertising laws.

37. Purple's statements in commercial advertising are literally false or misleading and are intended to influence consumer behavior in a manner that is harmful to Tempur Sealy.

38. The False Advertisement was posted to YouTube.com at URL: https://youtu.be/gN9ayoV1EXg in January 2016 and has received over 2 million views as of the date of filing this Complaint.

39. The False Advertisement is posted on the home page of the Defendants' commercial web site at www.onpurple.com.

40. The False Advertisement is posted on the Sleep Sherpa web site: (http://www.sleepsherpa.com/mattresses/purple-mattress-review-purple-reign/).

41. The False Advertisement is posted on Purple's Facebook page: https://www.facebook.com/LifeOnPurple/

42. The False Advertisement remains in all of these locations on the Internet as of the filing of this Complaint.

43. Consumers who have viewed the False Advertisement have shown that they recognize the TEMPUR-PEDIC Product featured in the video by leaving "comments" on the YouTube site where the video is displayed. For example, a viewer writes:

> "Awesome commercial and rather convincing, but I must say—the Purple Bed could have been tweaked to where it would keep an egg from breaking (the purple bedding accommodates an egg rather well) but that doesn't necessarily mean it is a good bed for human support. For example, **a tempur pedic might be great for support but might not keep an egg for breaking simply because it wasn't designed for that**."

And another viewer offers the separate comment:

> "the only thing that gives me pause to question is the fact that **it doesn't mention if it is better than the tempurpedic**. I want one but if I'm going to get it I want to make sure that it is truly the best bed I can get."

And if there was any question regarding what brand of mattress Purple intended to display in the False Advertisement it was put to rest my this comment by Purple itself:

> PURPLE RESPONSE: **"Tempurpedic was the hard mattress in the video."**

YouTube Comments, Exhibit 7.

44. On February 19, 2016, outside counsel for Tempur Sealy transmitted to Purple a cease and desist letter setting forth Tempur Sealy's objection to the False Advertisement including the display of Tempur Sealy's TEMPUR-CONTOUR product accompanied by Purple's false and/or misleading commercial representations. Exhibit 8.

45. On March 4, 2016, outside counsel spoke with counsel for Purple and reaffirmed Tempur Sealy's objection to the False Advertisement and again requested the False Advertisement be removed or edited by a date certain.

11

46. Despite Purple's actual notice of Tempur Sealy's objection to the False Advertisement, Purple continued to host and promote the False Advertisement in willful disregard of Tempur Sealy's rights and to its detriment.

## **FIRST CAUSE OF ACTION**
### **(False Advertising - Lanham Act)**

47. Tempur Sealy repeats and realleges each and every allegation contained in paragraphs 1 - 47 above as if fully set forth herein.

48. Purple sells mattresses in interstate commerce and is engaging in an extensive, nationwide advertising campaign in connection with the marketing of its PURPLE brand mattress that employs a variety of media, including advertising through its web site, through www.YouTube.com, on www.SleepSherpa.com, and through banner and digital advertisements displayed to consumers across the Internet.

49. The basis for the Purple advertising campaign is Purple's broad claims that its mattresses are superior to all competing mattresses, including Tempur Sealy's TEMPUR-PEDIC Products, and specifically superior to the TEMPUR-Contour mattress.

50. Purple delivers its message of product superiority in its advertising by displaying the TEMPUR-CONTOUR product and making specific statements about the product in an effort to convince consumers of the superiority of Purple's competing mattress products.

51. The claims made by Purple directed to Tempur Sealy's Products are representations of fact that are false and/or misleading in that they misrepresent the nature, characteristics, or qualities of Tempur Sealy's products. These misrepresentations are material to consumer purchasing decisions and have influenced or are likely to influence the buying public's mattress purchasing decisions.

52. Purple's deceptive conduct is and has been deliberate and has injured and continues to injure consumers and Tempur Sealy and its goodwill.

53. The statements directed to Tempur Sealy's TEMPUR-PEDIC Products are false and/or misleading and Purple knew or should have known them to be so since the advertising began and was on actual notice of Tempur Sealy's objections to the advertising yet continued the false and/or misleading advertising, and therefore Purple willfully engaged in the false advertising described above.

54. Purple's advertising of its Purple mattress as described above violates Section 42(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55. Tempur Sealy has been and continues to be damaged by Purple's false advertising of its Purple mattresses, including by diversion of sales from Tempur Sealy to Purple and the lessening of goodwill that Tempur Sealy's products enjoy among the buying public in an amount to be determined at trial.

56. Upon information and belief, Purple intends to continue its unlawful acts unless restrained by this Court

57. Purple's actions have damaged and will continue to damage Tempur Sealy and Tempur Sealy has no adequate remedy at law.

### SECOND CAUSE OF ACTION
### (Kentucky Deceptive Practices Violation)

58. Tempur Sealy repeats and realleges each and every allegation contained in paragraphs 1 - 58 above as if fully set forth herein.

59. Purple has engaged in unfair, false, misleading, and/or deceptive acts or practices in the conduct of trade in connection with the sale of goods that have been declared unlawful by KRS § 367.170.

60. Kentucky courts have held that civil remedies for deceptive actions are available to business competitors under Kentucky's Unfair Trade Practices laws. *Mendell v. Golden-Farley of Hopkinsville, Inc*., 573 S.W.2d 346 (Ky. App. 1978).

61. The statements directed to Tempur Sealy's products are false and/or misleading and Purple knew or should have known them to be so since the advertisements began, and was on actual notice of Tempur Sealy's objections to the advertising yet continued the false and/or misleading advertising, and therefore Purple willfully engaged in the deceptive trade practices described above.

62. Purple's advertising of its Purple mattress as described above constitutes an unfair trade practice under Kentucky law.

63. Upon information and belief, Purple has made and will continue to make substantial profits and gains as a result of its unfair trade practices to which it is not in law or equity entitled.

64. Upon information and belief, Purple intends to continue its unlawful acts unless restrained by this Court

65. Purple's actions have damaged and will continue to damage Tempur Sealy and Tempur Sealy has no adequate remedy at law.

66. Purple's actions involve the same character of outrage justifying punitive damages as willful and malicious misconduct in torts where the injury is intentionally inflicted entitling Tempur Sealy to an award of punitive damages, including under KRS §§ 411.184-186.

### THIRD CAUSE OF ACTION
### (Unfair Competition under Kentucky Law)

67. Tempur Sealy repeats and realleges each and every allegation contained in paragraphs 1 - 67 above as if fully set forth herein.

68. Tempur Sealy is the owner of all right, title and interest in and to the distinctive TEMPUR-CONTOUR Trade Dress.

69. Purple has used the TEMPUR-CONTOUR Trade Dress in connection with false or misleading misrepresentations with the intent of causing confusion, mistake and deception as to the quality or characteristics of Tempur Sealy's products and has thereby mislead and will continue to mislead the public regarding Tempur Sealy's products.

70. Purple has engaged in unfair, false, misleading, or deceptive acts or practices in the conduct of trade in a manner that displays indifference to the consequences of its actions.

71. Purple made a materials representation that was false and Purple either knew it to be false or made it negligently or recklessly, without any knowledge of its truth and as a positive assertion.

72. Purple's actions involve the same character of outrage justifying punitive damages as willful and malicious misconduct in torts where the injury is intentionally inflicted entitling Tempur Sealy to an award of punitive damages under Kentucky law.

73. Upon information and belief, Purple intends to continue its unlawful acts unless restrained by this Court

74. Purple's actions have damaged and will continue to damage Tempur Sealy and Tempur Sealy has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment under Kentucky Law)

75. Tempur Sealy repeats and realleges each and every allegation contained in paragraphs 1 - 75 above as if fully set forth herein.

76. The acts complained of above constitute unjust enrichment of Purple at Tempur Sealy's expense, in violation of the common laws of the Commonwealth of Kentucky.

77. Purple's actions involve the same character of outrage justifying punitive damages as willful and malicious misconduct in torts where the injury is intentionally inflicted entitling Tempur Sealy to an award of punitive damages under Kentucky law.

## PRAYER FOR RELIEF

Wherefore, Tempur Sealy respectfully requests that the Court enter judgment as follows:

A. An order directing an accounting by Purple of its profits by reason of its false advertising, awarding Tempur Sealy damages, and trebling Tempur Sealy's recovery pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

B. An order awarding Tempur Sealy its actual damages by reason of Purple's false advertising and unfair competition pursuant to the Lanham Act and Kentucky law and trebling Tempur Sealy's recovery pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

C. An order awarding Tempur Sealy punitive damages pursuant to Kentucky law;

D. An order permanently enjoining Purple from disseminating any advertisements claiming that the TEMPUR-PEDIC Products are undesirable based on false or misleading statements or that the Purple products are superior to the TEMPUR-PEDIC Products;

E. An order directing Purple to remove the False Advertisement from the Internet including from www.YouTube.com, from its commercial web site www.onpurple.com, and everywhere else the False Advertisement appears on the Internet, and to cease disseminating the False Advertisement through any other medium, including on the Internet through banner or other digital advertisements.

F. An order granting Tempur Sealy its costs and disbursements in this action.

G. An order awarding Tempur Sealy its reasonable attorneys' fees available under Kentucky law; and

H. An order granting Tempur Sealy such other and further relief as this Court may deem just and proper.

*s/Amy Sullivan Cahill/*
Amy Sullivan Cahill
CAHILL IP, PLLC
4965 U.S. Highway 42, Suite 1000
Louisville, Kentucky 40222
Tel. 502-855-3424
Email: acahill@cahill-ip.com

**Counsel for Plaintiffs**

**TEMPUR SEALY INTERNATIONAL, INC., TEMPUR-PEDIC INTERNATIONAL INC., TEMPUR-PEDIC MANAGEMENT, LLC, TEMPUR-PEDIC NORTH AMERICA, LLC, AND DAN-FOAM APS,**