UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| TEMPUR SEALY INTERNATIONAL, INC., et al. | ) | (Filed Electronically) |
| | ) | |
| PLAINTIFFS | ) | Civil Action No. 5:16-cv-83 |
| | ) | |
| v. | ) | Judge Joseph Hood |
| | ) | |
| WONDERGEL, LLC, et al. | ) | |
| | ) | |
| DEFENDANTS | ) | |

**DEFENDANTS' RESPONSE AND OPPOSITION
TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION (DN 11)**

Defendants WonderGel, LLC and EdiZONE, LLC, through counsel, respond and object to Plaintiffs' Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction (DN 11) and request an order denying Plaintiffs' Motion (DN 11) for the reasons below.

**I.  RELEVANT BACKGROUND FACTS**

WonderGel, LLC d/b/a Purple (hereinafter referred to as "Purple") is a Delaware limited liability company with its principal place of business in Utah.  *See* Affidavit of Casey McGarvey, Esq., attached as Exhibit 1 to Defendants' Motion to Dismiss, ¶ 2.  Purple is a startup e-commerce company that recently entered the consumer mattress market with a new mattress product it markets solely online principally through its www.onpurple.com website.  *Id*. ¶ 4.

EdiZONE, LLC is a sister company of Purple, but it does not make or sell any mattress products nor does it do any advertising.  *See* McGarvey Affidavit ¶ 11.  EdiZONE, LLC does not own or control Purple, nor does it direct Purple's business activities.  *Id*. ¶ 12.

On February 19, 2016, Purple received a cease and desist letter from Plaintiff Tempur Sealy International, Inc.'s (Tempur Sealy) counsel.  *See* DN 11-11.  Counsel demanded that Purple

immediately remove what counsel described as false advertising materials from YouTube and elsewhere. *Id.* Those same allegations are contained in the Plaintiffs' Complaint and involve the same video advertisement at issue here.

Only a week later, Purple responded to the cease and desist letter by correspondence dated February 26, 2016. *See* DN 11-12. In it, Purple's counsel explained its position concerning the advertisement, namely that Tempur Sealy appeared to be wrongfully attempting to disrupt Purple's entry into the market for anticompetitive purposes. Counsel also enclosed a copy of the Complaint that Purple had filed in the U.S. District Court for the Central District of Utah (the "Utah Complaint.")

Purple's Utah Complaint (filed here at DN 11-13) requests a declaratory judgment that its marketing materials do not violate any rights of Tempur Sealy (First Claim for Relief). The Utah Complaint also asserts claims that Tempur Sealy committed unlawful monopolization (Second Claim for Relief), abuse of process (Third Claim for Relief), and intentional interference with economic relations (Fourth Claim for Relief). *See* DN 11-13. WonderGel, LLC further seeks an injunction enjoining Tempur Sealy from threatening WonderGel, LLC; compensatory damages; treble damages; and attorney fees. *Id.*

Rather than respond to WonderGel, LLC's allegations in Utah, Tempur Sealy filed this action on February 26, 2016. *See* DN 11-14. In what can only be seen as an attempt to circumvent the Utah court's jurisdiction, Plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction (DN 11) involving the very same dispute. Therefore, as it stands, the issues in this case are currently pending before this Court and the U.S. District Court for the Central District of Utah.

The lack of jurisdiction over the Defendants and the applicability of the "first to file doctrine" are addressed in Defendants' Motion to Dismiss.

## II.   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION MUST BE DENIED

Jurisdictional issues aside, Plaintiffs' motion for a TRO and temporary injunction should be denied for the following reasons: Plaintiffs are not likely to succeed on the merits; there is no proof the advertisement will cause confusion or deceive; there is no evidence Plaintiffs will suffer irreparable harm if the TRO is denied; issuance of the TRO would actually harm Purple; and public interest would be harmed if this TRO were issued.

Congress enacted the Lanham Act to make "actionable the deceptive and misleading use of marks in… commerce… [and] to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127. The Sixth Circuit has previously concluded that false representations about the origin of goods or services are actionable under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *Federal-Mogul Bower Bearings, Inc. v. Azoff*, 313 F.2d 405, 408 (6th Cir. 1963). In *Federal-Mogul*, this court determined that the Lanham Act provided "a right of action to persons engaged in interstate and foreign commerce, against deceptive and misleading use of words, names, symbols, or devices, or any combination thereof, which have been adopted by a… merchant to identify his goods and distinguish them from those manufactured by others." *Id.* at 409, *quoted in Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 647 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S. Ct. 231, 74 L. Ed. 2d 182 (1982).

In this circuit, equitable relief, such as a preliminary injunction, is available to a Lanham Act plaintiff upon demonstrating, at a minimum, a likelihood of confusion among consumers as to the origin of the goods and services provided by defendant resulting from the defendant's use of the

disputed mark, as well as irreparable harm to the plaintiff's interests. *Id. See also Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983).

To assess the consumer's "likelihood of confusion" in the marketplace, this Court has identified a number of factors which should be examined, including: (1) strength of the plaintiff's mark; (2) relatedness of the services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care and sophistication; (7) intent of the defendant in selecting the mark; and (8) likelihood of expansion of the product lines using the marks. *Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 74 L. Ed. 2d 182, 103 S. Ct. 231 (1982) (citing *Toho Company, Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir. 1981)).

When considering a motion for a preliminary injunction, the District Court should consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026, 1030 (6th Cir. 1995).

### A. <u>Plaintiffs are Not Likely to Succeed on the Merits</u>

Likelihood of success on the merits when ruling on a motion for a temporary restraining order is typically seen as the most important factor. *Jones v. Caruso*, 569 F.3d 258 (6th Cir. 2009). For the reasons outlined below, Plaintiffs are not likely to succeed on the merits; therefore, its motion for a TRO and injunctive relief should be denied.

1. **Neither Plaintiffs' companies nor its products are mentioned by name in Defendant's advertisement.**

The advertisement in question never mentions Plaintiffs' product or company name. Rather, several generic mattresses are used in the video in question to generally depict mattresses that are too firm, too soft, and somewhere in the middle. Plaintiffs argue that their trademark mattress is the first mattress depicted in the advertisement and is used as an example of mattresses that are too firm. Speaking generally regarding mattresses that are hard, the spokeswoman in the video, who is dressed as Goldilocks, jokingly states that a hard mattress is the perfect way to tell your partner "Hey Baby, want some arthritis?". Plaintiffs argue that the comments made by the video's Goldilocks' spokeswoman were intended to deceive and mislead potential customers. In addition to never being identified by name, Plaintiffs' mattress appears on screen for only seven (7) total seconds out of the three (3) minute and fifty-eight (58) second video.

Despite the advertisement never mentioning Plaintiffs' trademark by name, Plaintiffs argue that its product is so distinctive – a patterned mattress cover with an orange piping/zipper – that all potential customers should be able to tell that it is Plaintiffs' product in Defendant's video. Plaintiffs provide zero evidence supporting this assertion. It provides zero testimony, surveys, or other documentary evidence showing that Plaintiffs' mattresses are any more identifiable than the average mattress. Without Plaintiffs' trademark ever mentioned by name, and without any evidence that a substantial amount of the potential audience could accurately identify Plaintiffs' mattress in its seven (7) seconds of total airtime, it is incredibly unlikely Plaintiffs would ever succeed on the merits of its false advertisement claim under the Lanham Act.

2. **Defendant's advertisement is not likely to cause confusion.**

Viewed in its entirety, there is nothing confusing about Purple's advertisement. The advertisement in question is an approximately four minute video in which a narrator dressed as

Goldilocks walks the viewer through an "eggshell test" and explains why Purple's mattress is preferable to three generic types of mattresses – too firm, too soft, and somewhere in the middle.

Additionally, Plaintiffs' mattress and Purple's mattress look nothing alike. Purple's mattress has a distinctive top purple layer, and the advertisement goes to great lengths to describe the science behind its top layer and why Purple's mattress is different than generic mattress types available on the market.

Aside from both Plaintiffs and Purple being in the mattress production business, none of the "likelihood of confusion" factors outlined in *Frisch's Restaurants, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), apply in this case. As explained above, the products do not look alike. The market channels are different – Plaintiffs advertise to millions during National broadcasts of shows like NCIS, while Purple has a Facebook page and a video on YouTube. And Plaintiffs cannot establish there was any intent or bad faith in Purple's decision to show Plaintiffs' mattress for about seven (7) seconds in its video. The video called for a mattress that was firm, and Plaintiffs' memory-foam style mattress is typically considered more firm than other styles of mattresses. There was simply nothing confusing or misleading about the advertisement as a whole, or about the very brief appearance of Plaintiffs' product in the advertisement.

In short, one of the roles of this Court is to determine whether there is a likelihood of confusion between the parties' goods. See *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002). As outlined above, there is no ground for confusion. The parties' goods are very different, and the entire premise of the subject advertisement is to highlight those differences. Therefore, Plaintiffs' request for a temporary restraining order should be denied.

### 3. Plaintiffs' mark is not strong.

The strength of a trademark is one of the factors courts should evaluate when determining whether an advertisement could cause confusion or is misleading. *Frisch's Restaurants, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). The more distinct a mark, the more likely is the confusion resulting from its infringement, and, therefore, the more protection it is due. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264-1265 (6th Cir. Ohio 1985), citing Callmann, *Unfair Competitition, Trademarks & Monopolies*, para. 20.43 (4th ed. 1983).

Here, Plaintiffs' mark is not strong. Aside from Plaintiffs' motion discussing an orange zipper/piping on the mattress cover, and the advertising money spent to create it, there is zero evidence that Plaintiffs' mattress and mattress cover is any more recognizable than any other mattress brand. In fact, Plaintiffs' trademark application to the United States Patent and Trademark Office (USPTO) was rejected. *See* Order from the USPTO, attached as Exhibit 1. In short, the USPTO held that Plaintiffs submitted insufficient evidence to "establish that purchasers will perceive the applied-for repeating patterns as trademarks." *Id.* In other words, the USPTO determined that Plaintiffs' mattress cover design was not distinct enough to warrant the protection of a trademark.

This directly contradicts Plaintiffs' motion for this temporary restraining order, in which Plaintiffs argue that everyone should know from the seven (7) seconds of airtime in Purple's advertisement that it was Plaintiffs' Termpur-Pedic mattress which Goldilocks described as too firm. Because Plaintiffs' mark is not strong, and there is no evidence that a sufficient amount of viewers could even identify Plaintiffs' product in the subject advertisement, it is unlikely that Plaintiffs will succeed on the merits of its false advertising claim.

### 4. Due to the tone and humor of the advertisement, Plaintiffs are unlikely to succeed on the merits.

Assuming *arguendo* that Plaintiffs' mattress *is* readily recognizable by a substantial number of viewers, Plaintiffs' false advertising claims must still fail on the merits as the advertisement is of a light-natured tone, and full of obvious attempts at humor. Purple encourages this Court to view the subject advertisement video in its entirety. In Purple's attempt to compare its product to three generic types of mattresses, the Goldilocks narrator imparts humor throughout. It is because of this obvious humor and tone that Plaintiffs are unlikely to succeed on the merits of their claims under the Lanham Act.

Plaintiffs go to great lengths in their Motion to establish the value and recognizability of its trademark. In the usual trademark case, a strong mark is a factor pointing toward a likelihood of confusion. However, "where the plaintiff's mark is being used as part of a jest… the opposite can be true." *Yankee Publ'g Inc. v. News Am. Publ'g Inc.,* 809 F. Supp. 267 (S.D.N.Y. 1992) (citing *Hormel Foods Corp. v. Jim Henson Prods.,* 73 F.3d 497, 502 (2d Cir. 1996). "The strength and recognizability of the mark may make it easier for the audience to realize that the use is a parody and a joke on the qualities embodied in trademarked word or image." *McCarthy on Trademarks and Unfair Competition* § 31:153 (4th ed. 2001) (hereinafter referred to as *McCarthy*). That is, it is precisely because of the mark's fame and popularity that confusion is avoided, and it is this lack of confusion that a parodist depends upon to achieve the parody. *See Hormel Foods,* 73 F.3d at 503; *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F. Supp. 1314, 1324 (S.D.N.Y. 1989). ("Certainly it is unremarkable that [defendant] selected as the target of parody a readily recognizable product; indeed, one would hardly make a spoof of an obscure or unknown product!").

In *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410 (S.D.N.Y. 2002), Hilfiger Licensing cited to the Lanham Act in objecting to a dog perfume company's

advertisement that conveyed a joking variation on Hilfiger's famous trademark. In granting the defendant's motion for summary judgment, the Court stated:

> Hilfiger, and perhaps some others, would do well to read *McCarthy* on the subject: No one likes to be the butt of joke, not even a trademark. But the requirement of trademark law is that a likely confusion of source, sponsorship, or affiliation must be proven, which is not the same thing as a 'right' not to be made fun of. *McCarthy* § 31:155; *see also Anheuser-Busch,* 962 F.2d at 322 ('The purpose of the Lanham Act is to eliminate consumer confusion, not to banish all attempts at poking fun or eliciting amusement… [or] deprive the commercial world of all humor and levity.'). Although Hilfiger is unamused, it has not offered evidence on the issue of confusion that would justify denying Nature Labs' motion for summary judgment. That motion therefore is granted.

*Id.* at 421.

Here, this advertisement very clearly has the tone of a light-hearted parody. Plaintiffs are clearly upset that an advertisement with Goldilocks as a sponsor would joke about a mattress (which looks like Plaintiffs' product but is never specifically named) being too firm and jokingly stating that a hard mattress is the perfect way to tell your partner "Hey Baby, want some arthritis?". If Plaintiffs' trademark is as strong as Plaintiffs lead this Court to believe, then there should be no confusion from the audience and the advertisement in question is an appropriate use of humor. *See Tommy Hilfiger Licensing, Inc.*, 221 F. Supp. 2d 410 (S.D.N.Y. 2002). In short, Plaintiffs have offered no evidence that potential customers would be confused by the appearance of its product in Defendant's video. Therefore, the request for injunctive relief must be denied.

### B. There is Zero Evidence that Plaintiffs Will Suffer Irreparable Harm if its Motion is Denied

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In deciding whether to

jump into a dispute before any discovery has occurred, a court should grant preliminary injunctive relief only if equitable relief is necessary to stave off irreparable harm "pending final hearing." *Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316, 60 S. Ct. 517, 84 L. Ed. 774 (1940).

A plaintiff's showing of irreparable harm must possess some substance, and "a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996). Courts prefer a showing of "both certain and immediate, rather than speculative or theoretical" harm when determining whether to grant injunctive relief. *Mich. Coalition of Radioactive Material Users, Inc v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

While Plaintiffs may argue that this Court may presume irreparable harm because this is a trademark case, the Supreme Court's decision in *eBay, Inc. v. Mercexchange, LLC*, 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), undermines this presumption. In *eBay*, the Supreme Court rejected the use of a categorical presumption in a permanent injunction analysis for a Patent Act case. *Id.* at 393-94. Lower courts have since applied the *eBay* reasoning to other intellectual property suits. *See, e.g. Salinger v. Colting*, 607 F.3d 68, 76 (2d Cir. 2010) (vacating an injunction in a copyright case because *eBay* abrogated the presumption).

In short, Plaintiffs must specifically and quantifiably establish irreparable harm before this Court may grant a temporary restraining order and injunctive relief. Here, Plaintiffs have not provided any evidence whatsoever to show irreparable harm. Merely saying that sales may decrease is not sufficient. Without any evidence of irreparable harm, Plaintiffs' Motion must be denied.

### C. If Plaintiffs' Temporary Restraining Order is Granted, Purple Will Suffer Irreparable Harm

With a business model that is based entirely on internet sales, this advertisement and the YouTube and Facebook views that come with it are essential to Purple's business. Unlike Plaintiffs, which are well-established with over $3 billion in revenue, Purple is a young start-up company which has experienced rapid growth in the last several months. An order requiring that this advertisement be taken down would gravely impact Purple's business – not just in sales, but in the impact it would have on the company's ability to maintain its increasing overhead and newly hired employees required to keep up with demand. If forced to take down this advertisement, there is a legitimate chance Purple's business will fail entirely.

What this case amounts to is an established company feeling threatened by an up and coming company entering the market. That threat and harm are the subject of WonderGel's first-filed Utah Complaint. *See* DN 11-13. Plaintiffs are using this lawsuit and request for an injunction to stifle a competitor. For this reason, and the reasons outlined above, Plaintiffs' request for a TRO and injunctive relief must be denied. Specifically, Plaintiffs' request that this court forego the requirement of a bond or "security," a requirement under FED.R.CIV.P. 65(c), should be denied.

The risk that Purple will suffer if this TRO and/or preliminary injunction is entered is substantial. Plaintiffs should, at the very least, be required to post an corresponding substantial security "to pay the costs and damages" Purple will surely sustain as a result of this proposed TRO. Because Purple and Plaintiffs are direct competitors and because of the short amount of time in which Defendants have had to respond to Plaintiffs' Motion, Purple has not disclosed the precise amount of damages it believes are likely to incur as a result of the TRO and/or injunction. Additional information may be provided, if required, for the court to review *in camera* if it deems it necessary.

### D. The Public Interest Would be Harmed if Injunctive Relief is Ordered

Generally speaking, this Court has held that the Lanham Act is constitutional. *Semco, Inc. v. Amcast, Inc.*, 52 F.3d 108, 111-12 (6th Cir. 1995) (stating that reach of Lanham Act is limited so as to be constitutional); *see also Seven-Up v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996). The Lanham Act is constitutional because it only regulates commercial speech, which is entitled to reduced protections under the First Amendment. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563, 65 L. Ed. 2d 341, 100 S. Ct. 2343 (1980) (stating that regulation of commercial speech is subject only to intermediate scrutiny).

However, even speech intended for commercial use is entitled to First Amended protection if it does not mislead or confuse the audience. *See* 134 Cong. Rec. 31, 851 (Oct. 19, 1988)(statement of Rep. Kastenmeier)(stating that § 43 of the Lanham Act only affects misleading commercial speech); see also *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771, 48 L. Ed. 2d 346 (stating that misleading commercial speech is not protected by the First Amendment); see also *Bonito Boats Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 157, 103 L. Ed. 2d 118, 109 S. Ct. 971 (1989) (stating that a trademark owner has at best a quasi-property right in his mark, and can only prevent its use so as to maintain a confusion-free purchasing public) (quoting *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 F. 299, 301(2d Cir. 1917).

In short, even though Purple's brief display of Plaintiffs' product was in a commercial for business use, the advertisement was not false, misleading or confusing. Because Purple's advertisement was not false, misleading or confusing, it is entitled to First Amendment protection. As protected speech, the public interest would be gravely harmed if this TRO is granted, thereby stifling Purple's freedom of speech and chilling others in their exercise of their freedom of speech.

For this reason, and the reasons outlined above, Plaintiffs' motion for a temporary restraining order and injunctive relief must be denied.

## III. CONCLUSION

Based on the above, as well as Purple's Motion to Dismiss and the first-filed Utah matter, this Court should deny Plaintiffs' Motion and dismiss this matter altogether.

Respectfully submitted,

/s/ Judd R. Uhl
Judd R. Uhl (89578)
Katherine L. Kennedy (92606)
Patrick B. Healy (92981)
R. Morgan Salisbury (94922)
Lewis, Brisbois, Bisgaard and Smith, LLP
909 Wright's Summit Parkway, Suite 230
Ft. Wright, KY 41011
(859) 663-9830 / (859) 663-9829 (Fax)
judd.uhl@lewisbrisbois.com
kate.kennedy@ lewisbrisbois.com
Patrick.healy@lewisbrisbois.com
morgan.salisbury@lewisbrisbois.com
*Attorneys for Defendants WonderGel, LLC and EdiZONE, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2016, a true copy of the foregoing was electronically filed, serving on all counsel presently of record.

/s/ Judd R. Uhl
Judd R. Uhl (89578)