*ELECTRONICALLY FILED*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | | |
|---|---|---|
| **TEMPUR SEALY INTERNATIONAL, INC., et al.** | ) | |
| | ) | |
| **PLAINTIFFS** | ) | |
| | ) | |
| | ) | **Civil Action No. 5:16-cv-00083** |
| **v.** | ) | |
| | ) | |
| **WONDERGEL, LLC.,** *et al* | ) | |
| | ) | |
| | ) | |
| **DEFENDANTS** | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS OR TO TRANSFER OR STAY PROCEEDINGS**

Plaintiffs Tempur Sealy International, Inc., Tempur-Pedic International Inc., Tempur-Pedic Management, LLC, Tempur-Pedic North America, LLC, and Dan Foam ApS (collectively "Tempur Sealy") submit the following response to Defendants Wondergel, LLC and Edizone, LLC's (collectively, "Purple") motion to dismiss or to transfer or stay proceedings ("Motion"). [D.E. #29.] For the reasons set forth below, as well as those argued before the Court during the hearing on Tempur Sealy's motion for a temporary restraining order [D.E. #32], the Court should affirm its oral ruling during the hearing and deny Purple's Motion.

## I.   ARGUMENT

### A.   THIS COURT HAS JURISDICTION OVER THE COERCIVE ACTION

This Court should exercise jurisdiction over this coercive action in light of the Sixth Circuit's presumption in favor of a coercive action over a declaratory judgment action regardless of which was filed first. In support of this argument, Tempur Sealy hereby incorporates as if

fully set forth herein, the argument set forth in its Motion for Injunctive Relief.[1] The pre-emptive Action in Utah was filed for no other reasons than the hope of keeping any litigation in the confines of Purple's chosen forum and avoid litigating the "Golidlocks Video" advertisement ("False Advertisement") in Kentucky where Tempur Sealy is headquartered.  Accordingly, Tempur Sealy asks the Court, in its discretion and in line with numerous decisions from the Sixth Circuit, to decline the first-to-file rule and permit Tempur Sealy to proceed with the Coercive Action so that it may stop Purple's promotion of the False Advertisement.

**B.    PERSONAL JURISDICTION OVER PURPLE IS APPROPRIATE**

To establish personal jurisdiction, a plaintiff must show (1) that "jurisdiction is proper under a long-arm statute or other jurisdictional rule of … the forum state," and (2) that "the Due Process Clause also allows for jurisdiction under the facts of the case."[2]  In determining personal jurisdiction, the Court should view the facts in a light most favorable to Tempur Sealy,[3] as Tempur Sealy need only make a prima facie case for jurisdiction at this early stage in the litigation.[4]  Tempur Sealy hereby fully incorporates the Complaint, [D.E. 1], Memorandum in Support of Motion for Injunction Relief, [D.E.11-2], and any additional facts or evidence elicited at the temporary injunction hearing held on March 30, 2016, as if fully set forth herein.

**1.    Purple's Actions Satisfy Kentucky's Long-Arm Statute**

Kentucky's long-arm statute authorizes a court to exercise personal jurisdiction over a person who (1) transacts business in Kentucky; (2) contracts to supply goods or services in

---

[1] Memorandum in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, D.E. 11-2, Section III.A. ("The Court Should Set Aside the First-To-File Rule in Favor of Jurisdiction Over the Coercive Action.").

[2] *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).

[3] *See Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 812 (E.D. Mich. 2000) ("[c]onstruing the facts in a light most favorable to [plaintiff] as the nonmoving party").

[4] *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887-88 (6th Cir. 2002).

Kentucky; or (3) causes injury by an act or omission in Kentucky.[5] The statute "should be liberally construed in favor of long-arm jurisdiction," but should not "*per se* be constructed as coextensive with the limits of federal due process."[6] "[T]he wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction."[7] There must be a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction."[8] Ultimately, this is a "common sense analysis, giving the benefit of the doubt in favor of jurisdiction."[9]  Purple has not challenged that its actions fall within Kentucky's long-arm statute and, as is made clear from the analysis below, Purple's actions fall within the above mentioned prongs of the statute.

## 2.     Finding that the Court has Personal Jurisdiction Over Purple Comports with Federal Due Process

The Court should analyze three elements to determine whether specific personal jurisdiction over Purple is appropriate: (1) whether "the defendant *purposefully avail[ed]* himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) whether "the cause of action . . . *arise[s] from the defendant's activities* there[;]" and (3) whether defendant's acts or consequences "have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant *reasonable*."[10]

---

[5] *See* KY. REV. STAT. 454.210.

[6] *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011).

[7] *Id.* at 58-59.

[8] *Id.* at 59

[9] *Id.*

[10] *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 771-72 (E.D. Mich. 2001) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir.1996)) (emphasis added); *Bird v. Parsons*, 289 F.3d 865, 874-76 (6th Cir. 2002) (citing *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

3

i.    *Purple Purposefully Availed Itself of Kentucky's Jurisdiction*

The operation of an Internet web site can satisfy the purposeful availment prong "if the web site is interactive to a degree that reveals specifically intended interaction with residents of the state."[11] In order to reach this determination, courts analyze a defendant's activities via its Internet web site on a "sliding scale" such that personal jurisdiction is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."[12] In the middle of this scale, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the web site."[13] Companies that wish to avoid being subject to jurisdiction in a particular state should choose not to sell its services or products to residents of that state.[14] Conversely, the ability of a forum resident to "consummate business transactions through the use of [a] site's shopping cart functionality" is arguably, by itself, enough to establish purposeful availment.[15]

In *Mor-Dall*, the court held that the defendant's web site met the "purposeful availment" prong because the web site "solicits customers from around the country, including [the forum

---

[11] *Bird*, 289 F.3d at 874-76 (quoting *Neogen Corp.*, 282 F.3d at 890) (internal quotations omitted).

[12] *Jones v. Dirty World Entm't Recordings, LLC,* 766 F. Supp. 2d 828, 832 (E.D. Ky. 2011) (citing *Neogen Corp.*) (the Sixth Circuit has "adopted the analysis of a Pennsylvania district court differentiating among various types of web sites for personal jurisdiction purposes"); *see Bird*, 289 F.3d at 874-76 (citing *Zippo* with approval).

[13] *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D. Mo. 1996)); *see Jones*, 766 F. Supp. 2d at 832 (quoting *Zippo*, 952 F. Supp. at 1124).

[14] *Zippo*, 952 F.Supp. at 1126–27; *see Visage Spa, LLC v. Salon Visage, Inc.*, No. 06-10756, 2006 WL 2130512, at *8 (E.D. Mich. July 28, 2006) (finding that defendant could "have limited its sales . . . or simply refused to sell to anyone located in Michigan."); *see also Bird*, 289 F.3d at 875 (citing *Zippo*, 952 F.Supp. at 1126–27).

[15] *Brown v. Way*, No. 10-CV-13016, 2011 WL 3555618, at *4 (E.D. Mich. Aug. 5, 2011) (citing *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F.Supp.2d 1014, 1021 (E.D. Mich. 2002) (finding purposeful availment where "the web site allows customers to purchase items and, at a minimum, attempts to solicit business from Michigan residents")).

state], to buy its products and have those products shipped into the customer's state."[16] In *Sports Authority*, the court found that the following facts were sufficient: (1) the defendant's web site "provides information about itself and its products[;]" (2) the defendant's web site allows "customers to contact them from the site via e-mail[;]" (3) customers can purchase defendant's product from its web site; (4) "[a]fter placing an order, [the defendant] ships the order to the customer and sends a confirm[ation] e-mail[;]" and (5) the web site is how the defendant primarily sells its products.[17]

A plaintiff may "'enhance' the contacts a defendant has with a forum by demonstrating that the defendant intentionally directed its tortious conduct toward plaintiffs in the forum."[18] The *Jones* opinion provides insight to this analysis.  On the nonresident defendants' web site,[19] the defendants invited and published comments by visitors and, at times, responded with their own comments.[20] At some point, a visitor to the defendants' web site posted a comment about the plaintiff, who was a resident of Kentucky.[21] The court in *Jones* held that the defendants, by

---

[16] *Mor-Dall Enterprises, Inc. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 880 (W.D. Mich. 2014) certificate of appealability denied, No. 1:13-CV-915, 2014 WL 2434865 (W.D. Mich. May 30, 2014).

[17] *Sports Auth.*, 97 F. Supp. 2d at 814-15; *see also Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.*, No. C-2-99-1190, 2000 WL 1810478, at *7-8 (S.D. Ohio Sept. 12, 2000) (defendant's operation of "a website which advertises a toll-free order hotline, provides information for placing wholesale orders, allows customers to join its e-mail list, and displays a link for ordering on-line at [a third party's web site]" tipped the scales in favor of personal jurisdiction).

[18] *Mor-Dall Enterprises*, 16 F. Supp. 3d at 881 (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir.2012)); *see Hyperbaric Options, LLC v. Oxy-Health, LLC*, No. 12-12020, 2013 WL 5449959, at *5 (E.D. Mich. Sept. 30, 2013) (citing *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005)).

[19] *Jones*, 766 F. Supp. 2d at 830.

[20] *Id.*

[21] *Id.*

virtue of the web site, "intentionally reache[d] beyond the boundaries of [their] home state to conduct business and interact with residents of other states."[22]  It continued:

> [D]efendants publish invidious and salacious posts by visitors to the web site . . ., [defendants] respond to those posts with [their] own comments, and thereby encourage and generate further posts by readers. In effect, a dialogue is created. It is also a fair inference that the salacious posts will invite hits from residents of the region where the subject of the posts lives and/or works. . . . [and defendant] purposefully availed itself of the privilege of causing a tortious consequence in Kentucky by virtue of its [W]eb site activities.[23]

The court also found the defendants' knowledge of the plaintiff's residence in Kentucky was irrelevant.[24]

Purple has purposefully availed itself of the privilege of acting in Kentucky.  As an initial matter, Purple knowingly caused injury in Kentucky and should be subject to suit in this Court. Purple directed its conduct at Tempur Sealy and its products located in Kentucky. In addition to this important fact, Purple's web site, which includes the False Advertisement, is interactive and commercial in nature. Some additional facts supporting the application of personal jurisdiction over Purple include, but are not limited to: (1) Purple's web site includes the False Advertisement, information about itself, and its products; (2) through the web site customers can engage in an on-line chat with Purple's representative's, contact Purple via e-mail, or find Purple's customer service number; (3) customers can register and save their information on the web site; (4) once registered a customer can sign up to obtain additional direct information in order to "keep up with" Purple; (5) customers in Kentucky can order Purple's products directly from the Web site; (6) Purple ships to all fifty states and waives the sipping fee to forty-eight states, including Kentucky; and (7) Purple does not have any retail stores and primarily sells its

---

[22] *Id.* at 833.

[23] *Id.*

[24] *Id.*

products through its web site.  Purple's actions and its web site constitute sufficient actions such that the Court should find Purple purposefully availed itself of the privilege of acting in Kentucky.

ii.    *Tempur Sealy's Claims Arise from Purple's Actions*

In reaching a decision regarding the second "arise from" prong, a court "must simply determine 'whether the causes of action were made possible by or lie in the wake of the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state [.]'"[25]  This standard should be leniently applied and if "the operative facts are at least marginally related to the alleged contact" this prong is met.[26] If the action flows from a defendant's website it necessarily meets the "arises from" prong.[27]   In *Fin. Ventures v. King*, the court held that allegedly defamatory statements made about the plaintiffs on the defendant's web site and on YouTube were "the foundation for [p]laintiff's claims" and that "[d]efendant's contacts with Kentucky and the cause of action are inseparable."[28]   Tempur Sealy's claims stem from Purple's use and promotion of the False Advertisement on Purple's web site and elsewhere on the Internet. The False Advertisement directly affects Tempur Sealy and its products located in Kentucky. Consequently, Tempur Sealy's cause of action and the harm it seeks to prevent "arise from" Purple's activity.[29]

---

[25] *Fin. Ventures v. King*, No. 4:15CV-28-JHM, 2015 WL 5545066, at *6 (W.D. Ky. Sept. 18, 2015) (quoting citing *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 553–55 (6th Cir.2007)); *see Bird*, 289 F.3d at 875 (quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)) (internal quotations omitted).

[26] *Bird*, 289 F.3d at 875; *Air Products*, 503 F.3d at 553–55 ("The second and third prongs . . . are less stringent.").

[27] *See Sports Auth.*, 97 F. Supp. 2d at 815 (the "action flow[s] from [defendant's] web site contacts and purchases").

[28] 2015 WL 5545066 at *6.

[29] *See Sports Auth.*, 97 F. Supp. 2d at 815 (the "action flow[s] from [defendant's] web site contacts and purchases").

7

iii.    *Jurisdiction Over Purple is Reasonable Under the Circumstances*

The first two prongs of the personal jurisdiction test are met and it is reasonable under the circumstances for this Court to exercise personal jurisdiction over Purple.[30] In a circumstance where a court finds that the facts are sufficient to satisfy the "purposeful availment" and "arise from" prongs, a presumption exists that it is reasonable for the Court to exercise personal jurisdiction;[31] only the unusual case will not meet the reasonableness criteria.[32] There are several factors a court may take into account when determining whether personal jurisdiction is reasonable, "including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies."[33] Kentucky has a legitimate interest in protecting the business interests of its citizen, Tempur Sealy, and in protecting its citizens from being deceived by the actions of Purple in its False Advertisement.[34] Further, Purple can file counterclaims and protect its interests in Kentucky. The exercise of personal jurisdiction over Purple, therefore, comports with the "traditional notions of fair play and substantial justice."[35]

---

[30] *See Bird*, 289 F.3d at 875 (citing *CompuServe*, 89 F.3d at 1268) ("An inference arises that the third factor is satisfied if the first two requirements are met.").

[31] *See id*.

[32] *First National Bank of Louisville v. J.W. Brewer Tire Co*., 680 F.2d 1123, 1126 (6th Cir.1982).

[33] *Bird*, 289 F.3d at 875 (citing *CompuServe*, 89 F.3d at 1268).

[34] *See Fortune Hi-Tech Mktg., Inc. v. Isaacs*, No. CIV.A.10-123-KSF, 2010 WL 1872873, at *6 (E.D. Ky. May 10, 2010).

[35] *Neogen Corp.*, 282 F.3d at 893.

## II.     <u>CONCLUSION</u>

For the foregoing reasons, Tempur Sealy asks that the Court deny Purple's Motion.

Respectfully submitted,

/s/ *Matthew A. Stinnett*
David A. Owen
Brian M. Johnson
Matthew A. Stinnett
DICKINSON WRIGHT PLLC
300 West Vine Street, Suite 1700
Lexington, KY  40507-1621
Tel. 859-899-8700
Email: bjohnson@dickinsonwright.com

Amy Sullivan Cahill
CAHILL IP, PLLC
4965 U.S. Highway 42, Suite 1000
Louisville, Kentucky  40222
Tel. 502-855-3424
Email: acahill@cahill-ip.com

COUNSEL FOR PLAINTIFFS
TEMPUR SEALY INTERNATIONAL, INC.,
TEMPUR-PEDIC INTERNATIONAL INC.,
TEMPUR-PEDIC MANAGEMENT, LLC.,
TEMPUR-PEDIC NORTH AMERICA, LLC,
and DAN-FOAM APS

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th  day of March, 2016, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send electronic notice to the following counsel of record:

- Judd R. Uhl    Judd.Uhl@lewisbrisbois.com, Jess.Allan@lewisbrisbois.com, Mindy.Stallmeyer@lewisbrisbois.com
- Katherine L. Kennedy    Kate.Kennedy@lewisbrisbois.com, Jess.Allan@lewisbrisbois.com, Mindy.Stallmeyer@lewisbrisbois.com
- Russell Morgan Salisbury    Morgan.Salisbury@lewisbrisbois.com, Jess.Allan@lewisbrisbois.com, Mindy.Stallmeyer@lewibrisbois.com
- Patrick B. Healy  Patrick.Healy@lewisbrisbois.com, Jess.Allan@lewbrisbois.com, Mindy.Stallmeyer@lewisbrisbois.com


/s/ Matthew A. Stinnett
COUNSEL FOR PLAINTIFFS

LEXINGTON 64129-3 31520v1