Eastern District of Kentucky
FILED
APR - 1 2016
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |
|---|---|
| TEMPUR SEAL INTERNATIONAL, INC., et al., | ) ) ) |
| Plaintiffs, | ) Civil Action No. ) 5:16-cv-83-JMH ) |
| v. | ) ) |
| WONDERGEL, LLC, et al., | ) **MEMORANDUM OPINION AND ORDER** ) |
| Defendants. | ) |

\*\*\*

This matter is before the Court upon Plaintiffs' Motion for a Temporary Restraining Order/Preliminary Injunction, [DE 11], and Defendants' Motion to Dismiss, [DE 29]. On March 30, 2016, the Court conducted a hearing on these motions during which both parties presented arguments. The Court announced its oral ruling, denying the Motion to Dismiss and granting the Motion for a Temporary Restraining Order/Preliminary Injunction. This memorandum opinion supplements the Court's oral rulings announced during the hearing and the separate Order entered contemporaneously herewith.

**I.**

Both parties are engaged in the business of selling mattresses, among other products. Defendants market and sell their products exclusively online. Around December 2015, Defendants created and published an online commercial (the "Goldilocks

Video"), which features one of Defendants' mattresses, but does not identify it by name. During the commercial, the Goldilocks character makes derogatory statements about the Tempur-Contour mattress and falls back on to the mattress "in a manner and accompanied by a facial expression and sound effects that suggest that the mattress is extremely hard and painful for those who use it." The Goldilocks Video has received over three million views on YouTube.com and over 14 million views on Purple's Facebook page. The video has been shared over fifty-three thousand times and appears on Purple's commercial website, onpurple.com.

On February, 19, 2016, Plaintiffs sent Purple a cease and desist letter, demanding that Purple remove all false and misleading statements regarding Plaintiffs' products from its advertising. A week later, Purple responded, stating essentially that Purple was not required to make any changes to its advertising and that it had filed a complaint in the United States District Court for the District of Utah to "protect its interests." *See* 2:16-cv-162-BSJ. In that action, Purple seeks a declaratory judgment that neither it nor the Goldilocks Video violates the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), that Plaintiffs have committed the crimes of unlawful monopolization, intentional interference with economic relations, and abuse of process.

**II.**

Defendants moved the Court to dismiss this matter based on lack of personal jurisdiction or, alternatively, to transfer or stay the matter based on the first-to-file rule. As stated on the record during the hearing, the Court declines to apply the first-to-file rule. *See Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001) (courts may dispense with the rule "where equity so demands"). The court sees no reason to apply the rule in the context of a coercive action filed subsequent to Defendant's anticipatory suit filed in Utah—which is, at its heart, an action for a declaratory judgment. *See Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) ("[T]he first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment.").

While Plaintiffs have the burden of establishing that the Court has personal jurisdiction over Defendants, only a prima facie showing is required at this stage of litigation. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Defendants contend that they have insufficient contacts with Kentucky for this action to go forward. The Kentucky long-arm statute, KRS § 454.210, while construed liberally in favor of long-arm jurisdiction, is not per se coextensive with the limits of federal due process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). The Court finds that the long-arm

3

statute is satisfied, however, because as explained in greater detail below, Defendants' internet sales constitutes transacting business in the Commonwealth. See KRS § 454.210(2)(a)(1). Further, the alleged violations of the Lanham Act likely constitute a tortious injury under §§ 454.210(2)(a)(3) and 454.210(2)(a)(4).

With respect to federal due process concerns, the relevant inquiry is whether the facts demonstrate that Purple possesses such minimum contacts with Kentucky that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Specific personal jurisdiction exists when: (1) the defendant purposefully avails himself of the forum state, invoking the benefits and protections of the forum state's laws; (2) the cause of action arises from the defendant's activities there; and (3) the acts of the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Mach. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Whether a forum state may assert jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (internal quotation marks omitted).

4

Defendants rely on the Supreme Court's decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014), to argue that Plaintiffs' connection to Kentucky is improperly being attributed to Defendants. Unlike Purple, the defendant in *Walden* had no identifiable connection to the forum state. The Supreme Court made clear, however, that personal jurisdiction must be based on contacts that the "defendant *himself*" creates with the forum state. *Walden*, 134 S.Ct. at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Courts have "consistently rejected" attempts to satisfy the minimum contacts requirement by demonstrating connections between the plaintiff and the forum state. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Further, the court must look to the defendant's contacts with the forum state itself—not just defendant's contacts with persons who reside in the forum state. *Id.* It is through this lens that the Court examines Defendants' conduct—both the use of their website, www.onpurple.com, and the alleged violations of the Lanham Act.

"The operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first *Mahasco* factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Neogen Corp.*, 282 F.3d at 890). Through Purple's website, customers in all fifty states may purchase

5

Purple's products. There is no charge for shipping to forty-eight states, including Kentucky. Website users in Kentucky, as well as those in all other states, may do the following: engage in online chat with Purple's representatives; sign up for Purple's email list; locate Purple's customer service number; contact Purple via email; and register and save their information on the website. The Court recognizes that Plaintiffs have not alleged that Defendants have actually served customers in Kentucky. And while Plaintiffs have the burden of proving personal jurisdiction, Defendants do not contest having website-based sales in Kentucky. As Plaintiffs are only required to make a prima facie showing of jurisdiction at this point, the Court is satisfied that Plaintiffs purposefully availed themselves of acting in Kentucky.

The Court must also consider whether the Plaintiffs' claims arise from Purple's contacts with Kentucky. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). Further, a plaintiff's claims need only a have substantial connection with the defendant's forum state activities. *Third Nat'l Bank v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Purple's activity in Kentucky springs completely from its website through which it markets its mattresses and other products. Plaintiffs allege that Purple engaged in

6

violations of the Lanham Act through a commercial featured prominently on its website. Accordingly, the operative facts in this matter are related to the alleged contacts between Purple and Kentucky.

Finally, in order to exercise personal jurisdiction, the Court must find that doing so is reasonable in light of the connection that allegedly exists between Purple and Kentucky. Satisfaction of the first two factors of the *Mahasco* analysis creates a presumption that that the exercise of personal jurisdiction is reasonable. *CompuServe, Inc.*, 89 F.3d at 1268. While Purple may find it burdensome to defend a lawsuit in Kentucky, it is outweighed by Kentucky's legitimate interest in protecting the interests of its residents and businesses. The particular allegations at issue have the potential to significantly harm Kentucky consumers, as well as Plaintiff, a Kentucky business. Although Utah has an interest in this action, as Defendants suggest, that does not overshadow the factors making personal jurisdiction over Defendants in Kentucky reasonable. Based upon the foregoing, the Court concludes that Plaintiffs have made a prima facie showing this Court's personal jurisdiction over Defendants.

## III.

Plaintiffs seek the entry of a temporary restraining order/preliminary injunction requiring the Defendants to remove

and cease using the advertisement known as the "Goldilocks Video" and any and all related marketing material. Plaintiffs bear the burden of establishing that they are entitled to such relief. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to grant such relief, the Court considers the following factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the relief sought; (3) whether granting the restraining order or injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the restraining order or injunction. *Summit Cty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004). No one factor is a prerequisite to relief but, rather, the factors are to be balanced against each other. *Overstreet*, 305 F.3d at 573.

The Lanham Act provides, in relevant part:

> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact . . . .
>
> (B) In commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

8

15 U.S.C. § 1125. Defendants do not dispute that Plaintiffs' Tempur-Contour Collection mattress is the mattress featured and referred to as the "hard" mattress in the Goldilocks Video. It is further undisputed that, in reference to the "hard" mattress, the Goldilocks character states the following:

> Looking for some shoulder pain? Try a hard mattress. It may feel like a rock and put pressure on your hips, but it's the perfect way to tell your partner: "Hey baby, want some arthritis?"

At another point, the character refers to the "hard" mattress as a "prison bed."

The Court is persuaded that these are likely false or misleading statements under the Lanham Act. When a Tempur-Contour mattress is shown in the commercial, the actor suggests that the mattress causes shoulder pain, is "rock hard," puts pressure on your hips, and may cause arthritis. The Court has considered Defendants' argument that the entire commercial is obviously in jest, but the Court unaware of any "humor exception" that would make literally false statements acceptable under the Lanham Act. Defendants' statements concerning the "hard" mattress can hardly be considered puffery, as these statements regarding potential negative health effects clearly cross the line beyond what is permissible advertising. *See Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1368 (2013) (citation and alteration omitted) (puffery defined as "subjective claims about products, which cannot be

9

proven either true or false."). Defendants also rely on *Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F.Supp.2d 410 (S.D.N.Y. 2002), in which the court found that the defendants had not committed false advertising under Section 43(a) of the Lanham Act for using a label that read, "If you like Tommy Hilfiger, your pet will love Timmy Holedigger." The court characterized the statement as "unverifiable puff"—easily distinguishable from the statements at issue here. Further, in the *Hilfiger* matter, the plaintiff's product was portrayed in a flattering light as opposed to a disparaging one, as is the case here.

Defendants contend that the Tempur-Contour mattress is not sufficiently recognizable such that viewers will recognize it as Plaintiffs' product. Based on the evidence Plaintiffs have presented, the Court is persuaded otherwise. Plaintiffs have spent millions of dollars across many forms of advertising to promote Plaintiffs' trade dress and the brand is extremely prevalent among mattress consumers. In excess of $300,000,000 in sales of products bearing the Tempur Sealy trade dress in the Tempur-Contour line have been sold. Further, Purple's representative stated in a YouTube public comment section that "Tempurpedic was the hard mattress in the video." The Court is satisfied that a significant number of viewers have and would continue to recognize the mattress as Plaintiffs' product.

The Court must also consider whether the Plaintiff would suffer irreparable injury in the absence of the relief requested. Because Plaintiffs have demonstrated a strong likelihood of showing that Defendants made false or misleading statements in violation of the Lanham Act, the Court presumes irreparable harm. *See KFC Corp. v. JRN, Inc.*, 3:11-CV-260-H, 2012 WL 170196, *6 (6th Cir. Jan. 19, 2012) (citing *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381-82 (6th Cir. 2006)). Additionally, the Court notes that the Goldilocks video is wildly popular, having been viewed millions of times and, no doubt, the number of views is increasing daily.

The Court finds that granting the relief requested will not harm others, as it is very limited in scope and Purple will still be able to advertise its products. Thus, Purple's business should not be significantly affected and consumers will still have complete access to Purple's products. Finally, the Court finds that the public interest will be protected, as false advertisements should be removed from the public's view. It is always in the public's best interest "to prevent consumers from being misled." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). Accordingly, after balancing these factors, the Court is persuaded that a temporary restraining order/preliminary injunction is appropriate under these circumstances.

11

This the 1st day of April, 2016.

                                                    Joseph M. Hood
                                                    United States District Judge

12